UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

-vs-                                                              Case No.: 2:08-cr-31-FtM-29SPC

CALVIN S. CUMMINGS
_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on the Defendant's Motion to Suppress Evidence and Memorandum of Law (Doc. #42) filed on July 1, 2009, the Government's Response to Motion to Suppress Evidence and Government's Motion to Cancel Hearing on Motion to Suppress (Doc. #44) filed on July 8, 2009, and the Defendant's Response to Government's Motion to Cancel Suppression Hearing (Doc. #48) filed on July 22, 2009. After a thorough review of the pleadings, the Court in its Order dated July 28, 2009 granted the Government's Motion to cancel the hearing on the Motion to Suppress but required counsel to attend a hearing regarding whether or not the Court would entertain holding a <u>Frank's</u> Hearing based upon the allegations in the Defendant's Motion to Suppress.

      The matter came on for hearing before the undersigned United States Magistrate Judge on July 28, 2009. The Government was represented by Assistant United States Attorney Jeffrey Michelland. The Defendant was present and represented by Assistant United States Public Defender Russell Rosenthal. Both counsel were allowed argument regarding the issue of whether or not the

Court should hold a Frank's Hearing based upon the allegations in the Defendant's Motion to Suppress (Doc. #42).

## DISCUSSION

The Defendant states that any information regarding the arrest made pursuant to the search of the residence located at 3330 Jeffcott Street in Fort Myers, Florida should be suppressed because the information that led to the search warrant was false and misleading. Specifically, the Defendant argues that Det. Tulko mislead the Honorable Tara Paluck, Lee County Judge to believe that the officers, and not just the informant, participated in the sale of a controlled substance by Calvin Cummings. Further, it is argued, the judge was misled that the factual allegations contained in the affidavit were those of the officer, as opposed to those of the informant. (Defendant's Motion to Suppress, p. ¶ 5). However, Det. Tulko was not present, thus, the Defendant argues the information presented to the judge was misleading. The Defendant further argues the judge was not able to assess the credibility of the CI because Det Tulko's statements misled the Judge into believing he was present. Finally, the Defendant argues that two of the three narcotics purchases were made several months prior to the actual affidavit being presented to the Judge to approve the search warrant and thus, the Defendant argues the information was stale.

In its Response to the Defendant's Motion, the Government argues that there is no cause for a Frank's hearing and therefore, no need for a motion to suppress, because the Defendant's allegations that the officer's statements in his affidavit were not false or misleading.

## *(1) Whether Det. Tulko's Statements were False and Misleading Creating the Need for A Franks Hearing*

Affidavits supporting arrest warrants are presumptively valid. U.S. v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009) (citing Franks v. Delaware*,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)).  In order to be entitled to an evidentiary hearing on a motion to suppress based on alleged misrepresentations or omissions in a search warrant affidavit, a defendant must make a substantial preliminary showing that the affiant made false statements, either intentionally or with reckless disregard for the truth, pointing specifically to the portions of the affidavit claimed to be false, and that the false statements were necessary to the finding of probable cause. Kapordelis, 569 F.3d at 1309.  When assessing whether the alleged false statements and omissions were material, the trial court is to disregard those portions of the affidavit which the defendant has shown are arguably false or misleading. Id. (citing Franks*,* 438 U.S. at 172). "[E]ven intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." Kapordelis, 569 F.3d at 1309 (citing Madiwale v. Savaiko*,* 117 F.3d 1321, 1327 (11th Cir.1997)). Looking only at the remaining portions of the affidavit, the court will then determine whether including the omitted facts would have prevented a finding of probable cause. Kapordelis, 569 F.3d at 1309.  The defendant bears the burden of showing that, "absent those misrepresentations or omissions, probable cause would have been lacking." Id. (citing U.S. v. Novaton*,* 271 F.3d 968, 987 (11th Cir.2001)). "'[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.' "Kapordelis, 569 F.3d at 1309

(quoting Franks, 438 U.S. at 171-72, 98 S.Ct. 2674)); U.S. v. Cross, 928 F.2d 1030, 1040 (11th Cir.1991).

The Defendant argues Det. Tulko made false and misleading statements which prevented the judge from having an accurate review of the affidavit. In his affidavit, Det. Tulko states that there were three undercover narcotics buys made at the Jeffcott residence. The first was made in August of, 2007, the second in October of 2007, and the third in December of 2007. Under the Kapordelis standard, the Court must review whether or not the information was false and misleading and/or whether or not the information supplied by the CI alone would have been sufficient to create probable cause to issue the search warrant. In other words, if the language the Defendant claims is misleading is removed from the affidavit would the judge still find sufficient probable cause to issue a search warrant.

*August 23, 2007 Transaction*

The first of the narcotics buys took place on August 23, 2007. In the affidavit, Det. Tulko stated "your affiant with the assistance of the CI made a controlled buy from within 3330 Jeffcott Street." (Doc. # 44, Affidavit of Tulko, ¶ 5). The Defendant argues that Det. Tulko misled the Court by inferring that he was present during the three undercover buys referred to in his affidavit. The Defendant also argues the affidavit further described conversations relating to the August 23 occurrence, which were allegedly made between the informant and the Defendant, but the Court was not advised that the affiant (nor any other law enforcement officer) witnessed these conversations. (Doc. # 42, Defendants Motion to Suppress, p. 2, ¶ 7). The Defendant argues:

> that were the affidavit correct the officers were witnesses to the "controlled buys," the reliability of the informants would be of no moment. However,

> since, as it turns out, the issuance of the search warrant was based exclusively upon allegations made by the informants, the affidavit must have afforded the issuing judge some basis to evaluate the reliability of the allegations. However, other than the usual platitudes about the informant having been "proven reliable," and the contention that they had made successful undercover purchases in the past, the affidavit provided no information upon which to evaluate the reliability of either informant.

(Doc. # 42, Defendant's Motion to Suppress, p. 3, ¶ 11).

The Government counters that the Defendant did not make a substantial preliminary showing that the affiant, knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit. The Government argues the information in the affidavit was sufficient and presented probable cause to the judge. Therefore, the Defendant should not be afforded a Frank's Hearing.

Although Defense counsel is correct that the affidavit states, "[o]n August 2007, your affiant, with the assistance of the CI, made a controlled buy from within 3330 Jeffcott Street," the affidavit goes on to say that the "CI was searched by your affiant prior to the buy and no money or contraband was located." (Doc. # 44, Affidavit of Tulko, ¶ 5). The CI was equipped with a concealed electronic transmitting device that allowed his/her conversations to be monitored by your affiant during the operation. (Doc. # 44, Affidavit of Tulko, ¶ 5). The CI was provided with U.S. currency by your affiant from Fort Myers Police Department funds....."(Doc. # 44, Affidavit of Tulko, ¶ 5). After the buy, the CI returned to Det. Tulko, with the narcotics. (Doc. # 44, Affidavit of Tulko, ¶ 7). At no time during or immediately after the transaction did the CI make contact with any other person. (Doc. # 44, Affidavit of Tulko, ¶ 7). The Affiant completed the scenario by informing the Court that "The CI then drove away from the described location and returned directly to your affiant."

The Defendant argues the affidavit further described conversations relating to the August 23 occurrence, which were allegedly made between the informant and the Defendant. Again, the Defendant argues, the judge was not advised that the affiant, nor any other law enforcement officer, witnessed these conversations. (Defendant's Motion to Suppress, ¶ 7)

The affiant states:

> The CI called Cummings at 239-878-1668, a cellular telephone supplied by Cummings to the CI, to set up a purchase of cocaine HCI. Cummings answered and directed the CI to drive to 3330 Jeffcott Street to meet with him. The CI then drove to the area of the described location and met with Calvin Cummings who just exited the north door of the residence. Cummings spoke with the CI and asked him/her if he/she was the police. The CI assured Cummings that he/she was not the police. Cummings asked the CI what he/she wanted. The CI said h/she was interested in an ounce and a half (1.5) of cocaine HCI. Cummins said he would not sell that much to the CI this time because he wanted to feel him/her out and make sure he/she was not the police. Cummings said he would sell the CI a half (.5) of an ounce of cocaine HCI for $400.00. The CI agreed and Cummings said he would be right back because he had to go back inside the house to get it. Cummings told the CI to wait where he/she was. The CI agreed and waited while Cummings re-entered the north door of the residence. Cummings soon returned and supplied the CI with a plastic sandwich bag that contained fourteen and seven-tenths (14.7) grams of cocaine HCI. The CI in return handed Cummings $400.00 in U.S. Currency. (Aff. ¶ 6).

"The cocaine was turned over to your affiant by the CI immediately upon contact. The CI did not contact anybody else en route to or on his/her way back from the described location to your affiant." (Doc. # 44, Affidavit of Tulko, ¶ 7). The Affiant continued to explain that "[a]fter the purchase of the cocaine from within the described location, your affiant again searched the CI and no contraband or money was located....." (Doc. # 44, Affidavit of Tulko, ¶ 7).

When reading the facts supplied in the affidavit regarding the August 23, 2007, narcotics transaction in their totality, the Court does not believe the affiant Det. Tulko made false statements

recklessly or in disregard for the truth. It is clear to the Court that Det. Tulko was monitoring the situation and was not at the Defendant's side when the transaction transpired. In any event, were the Court to take out the portion of the statement "your affiant, with the assistance of the CI made a controlled buy..." and allow the sentence to read, "the CI made a controlled buy...", the Court would still find probable cause to believe the transaction had occurred. Thus, it was clearly established in the affidavit, based upon reliable information, that narcotics were being sold at the 3330 Jeffcott residence in August of 2007, even if Det. Tulko was not standing beside the CI at the time of the transaction.

### *October 9, 2007 Transaction*

Regarding the October 9, 2007, incident, the Affiant states that "[o]n 09 October 2007 your affiant, with the assistance of the CI, made a controlled buy from within 3330 Jeffcott Street. (Doc. # 44, Ex. 1, ¶ 9; Defendant's Motion to Suppress, ¶ 8). Again, the Defendant argues that this allegation was false, as Detective Tulko did not make a controlled buy from this residence and the only person who would testify that a transaction occurred at that residence was the CI..

The buy on October 9, 2007, created probable cause to issue the search warrant regardless of the Defendant's allegation that Det. Tulko made it appear that he was present with the CI when the buy was made. The Defendant argues that, as with the previous incident, the affidavit again alleges a narrative as to conversations relating to the October 7 incident, but does not indicate that Detective Tulko was not a witness to the conversations. (Doc. # 42, Defendant's Motion to Suppress, ¶ 9).

The particular paragraph the Defendant is referring to states:

> The CI could not call Cummings at the cellular telephone he/she called Cummings at in the past because it was no longer in service. The CI instead drove directly to the described location and met with Calvin Cummings who was standing outside the north door of the residence. Cummings noticed the CI and motioned for the CI to pull into the driveway of the residence. The CI pulled his/her vehicle into the driveway outside the front north door of the residence. The CI had a conversation with Cummings through the open passenger side window of the vehicle. The CI told Cummings that he/she wanted to purchase ten (10) sacks of powder cocaine and wanted to spend $100.00 dollars. Cummings said to wait a minute and he would be right back. The CI agreed and waited while Cummings entered the north door of the residence. Cummings soon returned and supplied the CI with a plastic sandwich bag that contained ten (10) smaller plastic Ziploc baggies each containing cocaine HCI. The weight of the ten (10) baggies of cocaine HCI was two and three-tenths (2.3) grams. The CI in return handed Cummings $100.00 in U.S. currency. Cummings supplied the CI with his new cellular telephone number of 239-878-0586 for future purchases.

(Doc. # 44, Affidavit of Tulko, ¶ 10). The affiant goes on to explain "[t]he C[I] then drove away from the described location and returned directly to your affiant." (Doc. # 44, Affidavit of Tulko, ¶ 10). The cocaine was turned over to your affiant by the CI immediately upon contact. (Doc. # 44, Affidavit of Tulko, ¶ 10). The CI did not contact anybody else en route to or on his/her way back from the described location to your affiant. (Doc. # 44, Affidavit of Tulko, ¶ 11). The affiant further explains, "[a]fter the purchase of the cocaine from within the described location, your affiant again searched the CI and no contraband or money was located. The cocaine purchased by the CI was field-tested by your affiant and a presumptive reaction to the presence of cocaine was realized. (Doc. # 44, Affidavit of Tulko, ¶ 12).

Again, the CI went to the 3330 Jeffcott Street residence wearing a wire and purchased narcotics. He was at all times under the supervision, and at the very least, audio supervision of Det. Tulko . Even if the phrasing "your affiant with the assistance of the CI made a controlled buy from within 3330 Jeffcott Street," was removed from the affidavit, the result would have been the same

and the search warrant would have been issued based upon the CI's drug purchase. The mere fact that the CI made the purchase without Det. Tulko physically present does not destroy the probable cause to issue the search warrant in this case because the probable cause arises out of the CI's actions. *See* U.S. v. Williams, 177 Fed. Appx. 914, 918-919 (11th Cir. 2006) ( finding that the element of probable cause was based upon the controlled buy of the narcotics by the CI) .

*December 2007 Transaction*

Det. Tulko and the CI made a third buy ten (10) days prior to the Court issuing the search warrant. The Defendant argues that with respect to the December 2007 transaction, the affidavit states that "Detective Forbes, with the assistance of your affiant and the CI, made a third controlled drug purchase from within 3330 Jeffcott." Again, the Defendant claims this is false, as the only individual who purports to be a witness to this occurrence was the informant and further argues that the affidavit again alleges a narrative as to conversations between the Defendant and the informant, and, yet again, fails to mention that the informant is the only purported witness to these incidents. (Doc. # 42, Defendant's Motion to Suppress, ¶ 10).

The affidavit indeed states that "[w]ithin the past ten (10) days, Detective Forbes, with the assistance [of] your affiant and the CI, made a third controlled drug purchase from within 3330 Jeffcott Street." However, it goes on to reveal that "Detective Forbes searched the CI prior to the controlled drug purchase and no contraband or U.S. currency was located. The CI was equipped with an electronic transmitting device that allowed his/her contacts and conversations to be monitored by Detective Forbes during the operation. Detective Forbes provided the CI with U.S. currency from the Fort Myers Police Department funds...." (Aff. ¶ 14).

The affiant then describes the following scenario:

> Detective Forbes and the CI drove to the area of 3330 Jeffcott Street. Detective Forbes was situated in a location allowing Detective Forbes to watch the CI walk directly to 3330 Jeffcott Street. Your affiant was also situated in a location to observe the north door of the residence and the CI's arrival. The CI approached the north front door and met with Calvin Cummings who was standing inside the residence just inside the north front door dealing with another customer. Upon contact with Cummings, the CI asked to purchase marijuana and cocaine. Responding to the request from the CI, Cummings invited the CI inside the residence and conducted the drug transaction in the interior of the residence. Cummings handed the CI a certain amount of marijuana and a certain amount of cocaine HCI. In exchange, the CI handed Cummings the money supplied by Detective Forbes. Your affiant observed the CI exit the north front door of the residence with Cummings exiting the same door immediately following the CI. Your affiant knows Cummings on sight. Cummings remained on the property loitering in the driveway to the east of the north front door, The CI then returned directly to Detective Forbes and immediately surrendered the suspect marijuana and cocaine HCI purchased from Cummings from 3330 Jeffcott Street. The CI did not contact anybody en route to the residence or on the way back to Detective Forbes.....

(Aff. ¶ 15).

Once again, the CI, making the purchase under the supervision of Det. Tulko, created sufficient probable cause for the Court to issue the search warrant. As noted above, in <u>United States v. Williams</u>, the Eleventh Circuit held that the element of probable cause was based upon the controlled buy of the narcotics by the CI, and not upon the CI's statements. 177 Fed. Appx. at 918-919.

In addition, the affidavit contains further information that supports the Court's probable cause determination. Further Det. Tulko stated in his affidavit that

> [o]ver the past sixty (60) days, to include the past ten (10) days, your affiant has conducted surveillance at 3330 Jeffcott Street. Your affiant observed a high volume of transient type vehicle and pedestrian traffic coming and going from the residence with most visits being less than five minutes in duration. Based on your

>       affiant's drug investigation experience, this type of activity is
>       consistent with that of people coming and going from a residence for
>       the purpose of dealing in illegal drugs. Your affiant has also
>       personally observed Calvin Cummings freely coming and going from
>       the residence and also conduct several suspected street level drug
>       transactions on the property of the residence just outside the northern
>       most door of the residence.

(Aff. ¶ 16).

Here, Det. Tulko's probable cause was not based upon the CI's statements nor his own personal buy, but upon the controlled buy of the narcotics from the Defendant at the 3330 Jeffcott residence. Det. Tulko searched the CI before and after the buy and confirmed that the Defendant was not carrying drugs prior to the purchase, and then confirmed by a second search that the CI returned from the 3330 Jeffcott residence with narcotics. (Aff. ¶ 10) Based upon the Eleventh Circuits findings in <u>Williams</u>, the CI's purchase of the narcotics and Det. Tulko's actions confirming the buy was made at that time, is sufficient to establish probable cause to issue a search warrant. Thus, based upon the totality of circumstances surrounding the affidavit there was probable cause to issue a search warrant even if Det. Tulko had left out statements that might lead the Court to believe Det. Forbes was present when the buys were made. Consequently, no good cause exists to hold a <u>Frank's</u> hearing as the Court is able to determine that probable cause existed to issue the search warrant without Det. Tulko's description that he made a controlled buy with the assistance of the CI, because the CI did indeed make the controlled buys.

### *(2) Whether the CI was Reliable*

The Defendant argues that were the affidavit correct that the officers were witness to the "controlled buys," the reliability of the informants would be of no moment. However, since the

search warrant was based exclusively upon allegations made by the informants, the affidavit must have afforded the issuing judge some basis to evaluate the reliability of the allegations. The Defendant argues that other than the usual information about the informant having been "proven reliable," and the contention that they had made successful undercover purchases in the past, the affidavit provided no information upon which to evaluate the reliability of either informant. (Defendant's Motion to Suppress, ¶ 11).

The Defendant's argument lacks merit. The CI's controlled purchases specifically linked the Defendant and the residence located at 3330 Jeffcott with the sale of illegal narcotics. The CI was searched prior to each purchase and had no narcotics on his person. After each buy, the CI returned to Det. Tulko with the narcotics purchased from the Defendant at the 3330 Jeffcott residence. Therefore, the probable cause in this instance did not arise from the CI's allegations or statements that he/she had purchased drugs from the Defendant at the 3330 residence, but from the controlled buys made by the CI under the supervision and control of Det. Tulko. The Affidavit is clear that the CI did not make contact with anyone else between the time he left to make the narcotics buy and the time he returned with the narcotics to Det. Tulko. (Aff. ¶ 11). Under similar circumstances, the Eleventh Circuit held in <u>United States v. Williams</u>, that the narcotics purchases under the control of the officers was sufficient to create probable cause to issue a search warrant even though the <u>Williams</u> CI was found to be unreliable. 177 Fed. Appx. at 918-919 (finding that the element of probable cause was based upon the controlled buy of the narcotics by the CI and not upon any testimony by the CI). Thus, the value of the CI in this case, like in <u>Williams,</u> was derived not from any statements the CI may have made, but from the controlled buys he/she made under Det. Tulko and Forbes' supervision.

This is not to say that the CI in this instance was not reliable. The information obtained by the CI in this case was corroborated by other sources and surveillance. (Aff. ¶ 13). Furthermore, the affidavit specifically states the CI has worked with the Fort Myers Police Department for two (2) years, has always proven reliable, and has contributed to investigations that resulted in over fifty (50) search warrants being issued. (Aff. ¶ 13). Consequently, it is respectfully recommended that the CI's information was in fact reliable and the affidavit contained sufficient probable cause based upon the CI's actions in this case.

### *(3) Whether the Information in the Affidavit was Stale*

The Eleventh Circuit's case law concerning staleness, particularly in the context of drug transactions, was summarized in United States v. Bascaro, 742 F.2d 1335, 1345-46 (11th Cir.1984). Williams, 177 Fed. Appx. at 921. The Bascaro Court stated:

> No mechanical test exists for determining when information becomes fatally stale; rather, staleness is an issue which must be decided on the peculiar facts of each case. In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime. The circuits hold that where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance. Protracted and continuous activity is inherent in large-scale drug trafficking operations. In such cases, then, the staleness issue should be construed liberally.

742 F.2d 1335, 1345-46 (internal quotations and citations omitted). In this case, the affidavit states that the last controlled buy, made in December, was conducted "within the past 10 days." (Aff. ¶ 14).

The Eleventh Circuit has noted that by its nature, drug-dealing is an ongoing activity, not an isolated occurrence. Williams,177 Fed. Appx. at 921. As the Williams Court held, selling drugs

requires a dealer to establish a supply source and develop a customer base or reputation, it is not something that a person can simply do on impulse. Id. It is reasonable to infer that the use of a house for the sale of drugs will continue over some period of time, as (1) "residency in a house ... generally is not transitory and ephemeral," United States v. Bervaldi, 226 F.3d 1256, 1265 (11th Cir.2000), and (2) the location for the sale of drugs will require some consistency so that purchasers will know where to go. Williams, 177 Fed. Appx. at 921.

The affidavit contains other information regarding at least two previous buys, one in September, and one in October of the same year. Additionally, the affidavit contains information regarding Det. Tulko's surveillance. (Aff. ¶ 16). Det. Tulko's affidavit gives probable cause to suspect that at the time of issuance of the search warrant the 3330 Jeffcott residence was a location used for the sale of drugs. Thus, it is respectfully recommended the information used by Det. Tulko in his affidavit was not stale regarding the suspected drug trafficking operation at the 3330 Jeffcott residence.

## CONCLUSION

Based upon the arguments presented at the hearing, the briefs, and the affidavit of Det. Tulko, the Court respectfully recommends that no Frank's hearing is required and the Motion to Suppress should be denied.

Accordingly, it is now

**RECOMMENDED:**

The Defendant Calvin Cummings' Motion for a Frank's Hearing and Prior Motion to Suppress Evidence (Doc. #42) should be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended at Fort Myers, Florida, this __18th__ day of August, 2009.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record